# IN THE COURT OF APPEALS OF TENNESSEE
## AT JACKSON
### Assigned on Briefs March 25, 2014

## IN RE CONSERVATORSHIP OF ROBERT E. L. HATHAWAY, WARD

**An Appeal from the Probate Court for Shelby County**
**No. D-11390-1      Robert Benham, Judge**

---

**No. W2013-01474-COA-R3-CV - Filed July 16, 2014**

---

This is a conservatorship proceeding.  The ward's wife filed a petition to appoint a conservator in which she asked to be appointed as conservator for the ward.  After a trial, the trial court held that the ward was disabled and in need of a conservator but appointed a public conservator instead of the wife.  The trial court also set aside a transfer of real property, purportedly made by the ward prior to the filing of the conservatorship action.  The wife now appeals, arguing that the trial court erred in setting aside the transfer of real property and in rejecting her request to be appointed conservator.  Discerning no error, we affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Probate Court is Affirmed**

HOLLY M. KIRBY, J., delivered the opinion of the Court, in which ALAN E. HIGHERS, P.J., W.S., and J. STEVEN STAFFORD, J., joined.

Michael G. Floyd, Memphis, Tennessee, for the Appellant, Flora M. Hathaway

Deborah K. Brooks, Memphis, Tennessee, for the Appellee, Aging Commission of the Mid-South

## MEMORANDUM OPINION[1]

### FACTS AND PROCEDURAL BACKGROUND

In 2003, the ward in this action, Robert E. L. Hathaway, was diagnosed with "mild cognitive impairment" at the Veteran's Administration Hospital ("VA Hospital") in Shelby County, Tennessee. The record does not indicate the extent to which Mr. Hathaway's impairment affected his abilities over the next several years of his life.

In September 2009, Mr. Hathaway met Petitioner/Appellant Flora M. Hathaway ("Petitioner") at the VA hospital. At the time, the Petitioner was working at the VA as a patient advocate. Not long after that, the Petitioner and Mr. Hathaway began dating. According to the Petitioner, at that time, Mr. Hathaway was not experiencing any problems from his cognitive impairment diagnosis. She later said that, while they were dating, "[h]e seemed normal," and Mr. Hathaway told her that his occasional forgetfulness was a result of normal aging.

Mr. Hathaway and the Petitioner were married on May 20, 2010. At that time, Mr. Hathaway was 73 years old and the Petitioner was 59 years old. Before the marriage, Mr. Hathaway owned and lived in his own home at 6047 Pebble Beach Avenue in Memphis, Tennessee, and the Petitioner owned her own home in Shelby County and lived there with her special-needs daughter. After the Petitioner and Mr. Hathaway married, they lived together mostly at the Petitioner's home with the Petitioner's daughter.

About two weeks into the marriage, on June 3, 2010, the Petitioner prepared a quitclaim deed for Mr. Hathaway's home on Pebble Beach. The quitclaim deed purportedly conveyed title to the home from Mr. Hathaway[2] to Mr. Hathaway and the Petitioner. After that, the Petitioner viewed the home as owned equally by herself and Mr. Hathaway.

---

[1]**Rule 10. Memorandum Opinion**

> This Court, with the concurrence of all judges participating in the case, may affirm, reverse or modify the actions of the trial court by memorandum opinion when a formal opinion would have no precedential value. When a case is decided by memorandum opinion it shall be designated "MEMORANDUM OPINION", shall not be published, and shall not be cited or relied on for any reason in any unrelated case.

Tenn. Ct. App. R. 10.

[2]The Pebble Beach home was titled in the joint names of Mr. Hathaway and his former wife. However, by the time Mr. Hathaway married the Petitioner, his former wife was deceased.

According to the Petitioner, Mr. Hathaway began to experience significant health issues soon after they married. These included black-outs, drops in blood pressure, mini-strokes, and loss of memory. Mr. Hathaway began to misplace and forget to pay important bills, such as his mortgage. In September 2010, he was hospitalized for symptoms that suggested mini-strokes. The VA Hospital later diagnosed Mr. Hathaway as having in fact suffered an acute stroke. His treatment at that time included a heart catheterization.

Meanwhile, the relationship between Mr. Hathaway and the Petitioner deteriorated. Mr. Hathaway told his medical professionals that he no longer wanted to live with the Petitioner. He said that he wanted to live by himself in his own home and did not want home health treatment.

By this time, however, it was apparent that Mr. Hathaway was no longer able to live alone. He was often disoriented and was unable to manage his own affairs. Though he was accepted into an Alzheimer's day program, he refused to participate because of the cost. Finally, in November or December 2010, Mr. Hathaway was placed into an assisted living facility.

On December 6, 2010, the Petitioner had Mr. Hathaway execute a "Durable Power of Attorney Effective Upon Disability" in her favor. As the title suggests, the document gave the Petitioner the power to act on Mr. Hathaway's behalf in his business affairs upon his "subsequent disability or incapacity as certified in writing by a licensed medical doctor."

On January 28, 2011, the Petitioner utilized the power of attorney to sign a "Bill of Sale" on behalf of Mr. Hathaway. This document transferred title to Mr. Hathaway's 2004 Dodge truck from Mr. Hathaway to the Petitioner. At the time of the transfer of the truck title, there had been no written certification by a "licensed medical doctor" that Mr. Hathaway was disabled or incapacitated.

During this period, on January 3, 2011, Mr. Hathaway underwent a neuropsychological evaluation at the VA Hospital. On January 31, 2011, VA medical professionals completed a report that diagnosed Mr. Hathaway with dementia of the Alzheimer's type, vascular dementia with delusions, late effects of cerebrovascular disease, loss of function, dissatisfaction with living situation, multiple interpersonal losses not limited to bereavement, and relational difficulties. The report stated that, although Mr. Hathaway did not yet require 24-hour supervision, he was unable to live independently without substantial assistance, including daily monitoring.

While living in the assisted living facility, Mr. Hathaway called Eli Savage, who was the brother of Mr. Hathaway's deceased wife and Mr. Hathaway's longtime friend.[3]  Mr. Hathaway told Mr. Savage that he was unhappy living in the facility and wanted to move back to his home on Pebble Beach.  Mr. Savage brought an attorney and  police officers to the facility to see Mr. Hathaway.  Mr. Hathaway told the police officers that he did not want to stay in the facility, so they allowed Mr. Savage to take Mr. Hathaway to his Pebble Beach home.

To their dismay, when Mr. Savage and Mr. Hathaway arrived at the Pebble Beach home, it was, in Mr. Savage's words, a "wreck."  All of the appliances — the washer, dryer, and refrigerator — were gone.  Reportedly, Mr. Savage used his own funds to replace some of the missing items and hire a caregiver for Mr. Hathaway.  Around that time, on approximately March 10, 2011, Mr. Hathaway signed a power of attorney in favor of Mr. Savage.

On March 9, 2011, one day before Mr. Hathaway executed the new power of attorney in favor of Mr. Savage, the Petitioner filed a petition in the Probate Court of Shelby County, Tennessee, asking the court to appoint a conservator for Mr. Hathaway.  A week later, the Petitioner filed an amended petition.  In both, the Petitioner asked the trial court to appoint her as conservator for Mr. Hathaway.

The amended petition included allegations against Mr. Savage.  The Petitioner asserted in the amended petition that Mr. Savage removed Mr. Hathaway from the assisted living facility against the Petitioner's wishes, and that he closed Mr. Hathaway's bank accounts and took the funds for himself.  She asked the trial court to enjoin Mr. Savage from handling Mr. Hathaway's business or personal affairs.  The trial court granted the temporary restraining order requested, and also required Mr. Savage to return Mr. Hathaway to the nursing home. It then set a hearing on the matter.[4]

On March 16, 2011, the trial court appointed a guardian ad litem ("GAL") to represent Mr. Hathaway's interests.  On April 6, 2011, Attorney Richard W. Parks entered a notice of appearance as Mr. Hathaway's privately retained counsel.

On October 22, 2012, the trial court held a hearing on the status of the case.  The trial was set for February 2013.  Pending the February 2013 trial, the trial court appointed the Appellee

---

[3]Mr. Hathaway and Mr. Savage's sister Bertha were married for 42 years.  Bertha died in 2008.

[4]The record does not indicate whether there was a hearing on the TRO.

Aging Commission of the Mid-South ("Aging Commission"), specifically the district public conservator Peggy Dobbins, as the interim conservator for Mr. Hathaway.

On December 3, 2012, the GAL submitted his report to the trial court. In the report, the GAL informed the trial court that Mr. Hathaway was in need of a conservator, as requested in the petition. However, the GAL recommended that the trial court decline the Petitioner's request to be appointed as Mr. Hathaway's conservator. The GAL observed, "The relationship between Mrs. and Mr. Hathaway is beyond repair." The GAL recommended that the trial court appoint a public conservator — the Aging Commission — as the conservator for Mr. Hathaway.

On February 4 and 5, 2013, the trial court conducted the trial as scheduled. It heard testimony from the Petitioner, Mr. Savage, Mr. Hathaway, and Ms. Dobbins.[5]

At the outset of the trial, the Petitioner abandoned her request to be appointed as Mr. Hathaway's conservator. On the first day of trial, counsel for the Petitioner said that the Petitioner no longer sought to be appointed as the conservator for Mr. Hathaway and that she agreed with the GAL's suggestion that the trial court appoint the Aging Commission as conservator. The Petitioner testified to this effect as well.

By the second day of trial, the Petitioner's position on this issue had shifted. Counsel for the Petitioner informed the trial court that the Petitioner wished to rescind the position she had taken on this point. Counsel clarified that, although the Petitioner "had no objection at all to the [Aging] Commission being appointed[,] . . . she also would like to be considered." In response to this statement, the trial judge commented that he was "not going to deal with somebody who can't make up their mind." The trial judge added, "[I]n all probability, I find some credibility issues with her testimony, and I also don't think that it would be to [Mr. Hathaway's] best interest for her to be the conservator."

Mr. Savage testified as well. He told the trial court that he was not prepared to take on the responsibility of being the conservator for Mr. Hathaway, and so was not asking the trial court to appoint him. Mr. Savage said, however, that he hoped to remain a part of Mr. Hathaway's life and that he would like for the trial court to permit him to make medical decisions for Mr. Hathaway.

The trial court also heard testimony from Ms. Dobbins, the interim conservator for Mr. Hathaway. She explained that, as public conservator, she serves as the conservator for persons over 60 years old who need a conservator but do not have a friend or family member

---

[5]The GAL also testified. His testimony was essentially a narrative of his December 2012 report.

willing or suitable to serve in that capacity. Ms. Dobbins indicated that, in any given case, it was within the court's discretion to choose to appoint the Aging Commission as conservator. She informed the trial court that, since it appointed the Aging Commission as the interim conservator for Mr. Hathaway in December 2012, Mr. Hathaway had been placed in a VA foster care home. She described Mr. Hathaway as "a wonderful, lovely gentleman" and said that he was "extremely happy" in the VA foster care home. Ms. Dobbins stated that the Aging Commission was willing to serve as the permanent conservator for Mr. Hathaway.

Ms. Dobbins testified about the quality of Mr. Savage's care for Mr. Hathaway. As background, she indicated that she had dealt with hundreds of conservatorship cases since first taking the job in 1986. She praised Mr. Savage's efforts to care for Mr. Hathaway as very diligent, both before and after the trial court appointed the Aging Commission as interim conservator, and even added that she had "never seen anything like it."

Mr. Hathaway testified on his own behalf. His testimony demonstrated the extent of his dementia. He could not recall the Petitioner's name and testified incorrectly about where he had slept the night before. Mr. Hathaway did not know why he was in court. For the record, the trial court noted that Mr. Hathaway "slept through a substantial portion of the proceedings."

At the conclusion of the hearing, the trial court issued an oral ruling. As requested in the petition, the trial court found by clear and convincing evidence that Mr. Hathaway was a disabled person as defined in Tennessee Code Annotated § 34-1-101(7) who was in need of a conservator. However, it rejected the Petitioner's request to be appointed Mr. Hathaway's conservator. The trial court noted that the Petitioner wavered about whether she wanted to be appointed conservator, and felt that wavering on such an important decision was not acceptable. Also weighing against appointing the Petitioner as conservator, the trial court stated, was the fact that "there have been questionable financial transactions between" the Petitioner and Mr. Hathaway. The trial court also declined to appoint Mr. Savage as the conservator because "he has not filed any pleadings to be conservator and at the same time, has announced to the Court that he's . . . no longer in a position to take care of Mr. Hathaway on a day-to-day basis."

The trial court concluded that appointing the Aging Commission, *i.e.*, Ms. Dobbins, as permanent conservator was in Mr. Hathaway's best interest. The trial court observed that Ms. Dobbins had handled hundreds of conservatorships in the past 30 years and commented that the court had "the utmost respect for Ms. Dobbins and the service that she performs in this community." Going forward, the trial court asked the Aging Commission to consult with Mr. Savage on medical decisions for Mr. Hathaway.

The trial court took two other actions in addition to appointing the conservator. First, the trial court set aside the transfer of Mr. Hathaway's truck to the Petitioner and directed the Petitioner to immediately return the truck to the Aging Commission. The power of attorney executed by Mr. Hathaway in favor of the Petitioner had a condition precedent — it took effect only upon Mr. Hathaway's "subsequent disability or incapacity as certified in writing by a licensed medical doctor." The trial court reasoned that the power of attorney was not in effect on January 28, 2011, when the truck was transferred, because at that time there was no written certification of disability by a medical professional. Second, the trial court set aside the June 2010 quitclaim deed that purported to transfer the Pebble Beach home from Mr. Hathaway alone to the Petitioner and Mr. Hathaway. The trial court found that the quitclaim deed was not signed by the notary public in two places, as required, and that it was not properly executed by Mr. Hathaway. The trial court gave the Aging Commission 60 days to file a property management plan as to the Pebble Beach home.

On February 11, 2013, the trial court entered a written order consistent with its oral ruling and incorporating the oral ruling by reference. The order specified the rights and responsibilities of the Aging Commission in its role as conservator for Mr. Hathaway. It directed the Aging Commission to consider the GAL fees and other fees in the property management plan.

On March 4, 2013, the Petitioner filed a motion to alter or amend the trial court's February 11, 2013 judgment, pursuant to Rule 59.04 of the Tennessee Rules of Civil Procedure. In the motion, the Petitioner argued that the trial court erred in setting aside the transfer of the Pebble Beach home, in not setting aside Mr. Savage's power of attorney, in denying the Petitioner's request to be appointed conservator, and in finding that Mr. Savage was credible. The Aging Commission filed a response opposing the motion.

On May 8, 2013, the trial court conducted a hearing on the motion to alter or amend.[6] On May 31, 2013, it entered an order denying the motion. The trial court observed that the Petitioner was given a full and fair opportunity to present her case at the February 2013 hearing. It found that the Petitioner had "presented no new evidence to support her Motion and the fact that she was not successful in the hearing is not grounds to alter or amend a judgment." The Petitioner now appeals.[7]

---

[6]The appellate record does not include a transcript of the hearing on the motion to alter or amend.

[7]The appellate record includes several motions and responses subsequently filed, all relating to the administration of the conservatorship. The only order at issue in this appeal, however, is the order denying the motion to alter or amend the trial court's February 11, 2013 order appointing the Aging Commission as conservator for Mr. Hathaway. An order granting a conservatorship is final for purposes of appeal, so long

(continued...)

ANALYSIS

On appeal, the issues listed in the Petitioner's appellate brief are quite general and vague.[8] In the Argument section of the brief, it appears that the Petitioner makes arguments similar to those made in the motion to alter or amend the trial court's February 11, 2013 order, namely, that the trial court erred in setting aside the transfer of Mr. Hathaway's Pebble Beach home, in not setting aside the power of attorney Mr. Hathaway executed in favor of Mr. Savage, in denying the Petitioner's request to be appointed as conservator, and in crediting Mr. Savage's testimony. We will address them as best we can.

The Petitioner first claims that "the trial court based its decision on a clearly erroneous assessment of the evidence" when it set aside the June 2010 quitclaim deed because it was executed under undue influence of the Petitioner over Mr. Hathaway. She argues that, because the quitclaim deed was executed before Mr. Hathaway was determined to be incompetent, the trial court erred in setting it aside.

Respectfully, the Petitioner has misconstrued the trial court's holding. "Once it is determined that a person is in need of a conservator, . . . a trial court is vested with jurisdiction over the person's property." *In re Conservatorship of Groves*, 109 S.W.3d 317, 349 (Tenn. Ct. App. 2003). In the course of the conservator proceedings below, the trial court took action to

---

[7](...continued)
as it leaves nothing for the court to do with respect to the establishment of a a conservatorship. *See In re Estate of Rinehart*, 363 S.W.3d 186, 188-89 (Tenn. Ct. App. 2011).

[8]The Statement of the Issues in the Petitioner's appellate brief lists the following:

> 1. Appellant avers that the [sic] there was an abuse of discretion when the Court based is decision on a clearly erroneous assessment of the evidence and employed reasoning that caused an injustice to the complaining party.
>
> 2. Appellant avers that the Court employed reasoning that caused an injustice to the complaining party, which is an abuse of discretion concerning Plaintiff's power of attorney.
>
> 3. Appellant also alleges that the Court erred when it reached an illogical conclusion by making a decision to deny Appellant's request to be appointed Conservator merely because counsel alleged Appellant was not opposed to the Aging Commission being appointed Conservator.
>
> 4. Appellant avers that because of the contradictory testimonies of Mr. Parks [Mr. Hathaway's counsel] and Mr. Savage, the weight of the credibility of Mr. Savage's testimony should be substantially reduced.

preserve the assets needed to pay for his care, especially his most valuable asset, the Pebble Beach home.[9] On its face, the purported quitclaim deed was not signed by the notary public in two places and was not even properly executed by Mr. Hathaway. This was the basis for the trial court's decision to set it aside. While there was evidence in the trial indicating that there were, as noted by the trial court below, "questionable financial transactions" between the Petitioner and Mr. Hathaway, neither undue influence nor Mr. Hathaway's incompetence were the basis for the trial court's action. From our review, we agree with the trial court that the quitclaim deed is inadequate on its face. Where the inadequacy is so plain, the trial court acted within its discretion to preserve the ward's real property. *Id*. at 349-50. For this reason, we affirm the trial court's determination to set aside the quitclaim deed.

The Petitioner also argues that the trial court abused its discretion by setting aside her power of attorney but not setting aside Mr. Savage's power of attorney. Again, the Petitioner misapprehends the trial court's ruling. The trial court did not "set aside" the power of attorney Mr. Hathaway signed favor of the Petitioner in December 2010. Rather, it noted that the power of attorney included a condition precedent, stating that it would take effect only upon Mr. Hathaway's "subsequent disability or incapacity as certified in writing by a licensed medical doctor." On this basis, the trial court held that the power of attorney was not in effect when the Petitioner transferred title to Mr. Hathaway's truck to herself on January 28, 2011, since there was no written certification of Mr. Hathaway's incapacity at that time. The record supports this ruling. The record confirms the trial court's observation that the first written indication of Mr. Hathaway's incapacity was the VA Hospital's evaluation issued on January 31, 2011. The power of attorney executed by Mr. Hathaway in favor of Mr. Savage was not addressed by the trial court, and any alleged need to do so was obviated by the appointment of the Aging Commission as Mr. Hathaway's conservator. Therefore, this argument is without merit.

The Petitioner also argues that the trial court "reached an illogical conclusion . . . by making a decision to deny [the Petitioner's] request to be appointed Conservator merely because

---

[9]Ordinarily, a conservatorship proceeding involves a single issue — whether the appointment of a conservator is warranted. *In re Conservatorship of Groves*, 109 S.W.3d 317, 345 n.118 (Tenn. Ct. App. 2003). "If a person is found to be sufficiently incapacitated to require a conservator, the trial court may empower the conservator to take steps to preserve the incapacitated person's real and personal property." *Id.* Nevertheless, once it is determined that a person is in need of a conservator, a trial court is vested with jurisdiction over the incapacitated person's person and property. *Id.* at 349. The Petitioner in this case argues only that the evidence does not support the trial court's action, and does not argue that the trial court erred in reaching out to set aside the property transfer instead of leaving that for a separate action initiated by the court-appointed conservator. On appeal, the appellate court need only address issues raised by the parties in their appellate briefs. *See Childress v. Union Realty Co.*, 97 S.W.3d 573, 578 (Tenn. Ct. App. 2002) ; Tenn. R. App. P. 13(b).

counsel alleged [the Petitioner] was not opposed to the Aging Commission being appointed Conservator." As acknowledged by the Petitioner, she more than once stated to the trial court that she did not oppose the appointment of the Aging Commission as Mr. Hathaway's conservator. Having done so, she cannot now take the position on appeal that the trial court erred in appointing the Aging Commission as conservator. Moreover, even if the Petitioner *had* opposed a decision to appoint the Aging Commission as conservator, the trial court had ample reason to choose to appoint the Aging Commission instead of the Petitioner. The record showed that the Petitioner's relationship with Mr. Hathaway was irreparably fractured, that there was reason to question the Petitioner's suitability as conservator, and that Mr. Hathaway had been doing well with the Aging Commission as the interim conservator. This issue is without merit.

Finally, the Petitioner argues that the trial court erred in crediting the testimony of Mr. Savage. The Petitioner's appellate brief alludes to a payment made to Mr. Hathaway's attorney, but it does not identify how the Petitioner was aggrieved by the trial court's credibility finding or even any way in which it adversely affected Mr. Hathaway. We deem this issue to be without merit.

## CONCLUSION

The decision of the trial court is affirmed. Costs on appeal are to be taxed to the Appellant, Flora M. Hathaway and her surety, for which execution may issue, if necessary.

_____
HOLLY M. KIRBY, JUDGE